**MILBERG WEISS BERSHAD**
**& SCHULMAN LLP**
Edith M. Kallas
Joseph P. Guglielmo
Douglas Richards
Michael M. Buchman
Elizabeth Rosenberg
Lili R. Sabo
One Pennsylvania Plaza
New York, NY  10119
Telephone:   (212) 594-5300
Facsimile:    (212) 868-1229

*Plaintiffs' Preliminary Liaison Counsel*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

———————————————————— x

**IN RE:  INSURANCE BROKERAGE**           :     MDL No. 1663
**ANTITRUST LITIGATION**                         :
                                                             :     Civil No. 04-5184 (FSH)
**APPLIES TO:  05-1079, 05-1167, 05-**   :
**1168, 05-1794, 05-1795, 05-1797, 05-1800,**  :     Hon. Faith S. Hochberg
**05-1801 (FSH)**                                     :
                                                             :
                                                             :
                                                             :
————————————————————— x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO AON'S MOTION TO STAY ALL PROCEEDINGS**

# TABLE OF CONTENTS

Page

Table of Authorities ........................................................................................ iii

Summary of Relevant Factual Background ....................................................... 4

ARGUMENT .................................................................................................... 7

A. Aon's motion for a stay should be denied because there are
   claims asserted against Aon that are not affected by the
   proposed *Daniel* settlement. .................................................. 9

B. Under prevailing Third Circuit law, the *Daniel* case is not a
   "parallel" proceeding to this case and thus abstention under
   *Colorado River* is inappropriate. ....................................... 11

   1. Different Legal Issues ................................................. 13

   2. Different Parties ........................................................ 14

C. Even if Aon can establish that the actions are parallel,
   abstention under *Colorado River* is inappropriate because
   Aon has failed to show that the relevant factors outweigh the
   heavily weighted preference favoring the district court's
   retention of the case on a normal track .................................. 15

   1. Aon's submission fails to meet the Third Circuit's
      interpretation of the "avoidance of piecemeal litigation"
      factor because there is no showing that Congress
      specifically intended to have the claims in this case resolved
      in one forum ................................................................... 16

   2. Though the *Daniel* case has been pending since 1999, it is
      unclear whether the referenced discovery and briefing are of
      any significance to this action. In any event this factor has
      little weight given that the *Daniel* settlement will not
      dispose of all claims ...................................................... 21

   3. Aon's statement that the Illinois Court will protect the
      Interest of the Parties in this Case misconstrues the
      relevance of this factor because the issue is not only

whether the Illinois Court will act impartially and give affected class members a hearing but whether the Illinois Court has the power to act and to grant the remedy sought by the plaintiffs in this case. ........................................................ 24

D.  Aon's appeal to this Court's inherent discretionary power should be rejected because it is an effort to circumvent the limitations imposed by *Colorado River*.  Indeed, courts have applied the same exceptional circumstances to request for stays based on the Court's inherent power to manage its docket............................................................................................ 24

CONCLUSION............................................................................................ 27

# TABLE OF AUTHORITIES

## CASES

*Burford v. Sun Oil Co.,*
  319 U.S. 315 (1943) .............................................................................. 17, 18, 20

*Chiropractic America v. Lavecchia,*
  180 F.3d 99 (3d Cir. 1999) ........................................................................ 19, 20

*Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,*
  761 F.2d 198 (5th Cir. 1985) ........................................................................... 25

*Colorado River Water Conservation District v. United States,*
  424 U.S. 800 (1976) ................................................................................. *passim*

*Complaint of Bankers Trust Co. v. Chatterjee,*
  636 F.2d 37 (3d Cir.1980) ..................................................................... 11, 13, 25

*Dean Witter Reynolds, Inc. v. Byrd,*
  470 U.S. 213 (1985) ........................................................................................ 24

*Eastern Associated Coal Corp. v. Skaggs,*
  272 F. Supp. 2d 595 (S.D. W. Va. 2003) .................................................... 21, 22

*Feldman v. Gardner,*
  661 F.2d 1295 (D.C. Cir. 1981) *vacated on other grounds,* 460 U.S. 462
  (1983) .............................................................................................................. 19

*Gabelli v. Sikes,*
  No. 90 Civ. 4904, 1990 U.S. Dist. LEXIS 17015 (S.D.N.Y. Dec. 14,
  1990) ................................................................................................................ 16

*General Investment Co. v. Lake Shore & M.S. Railway Co.,*
  260 U.S. 261 (1922) ........................................................................................ 19

*Grode v. Mutual Fire, Marine & Inland Insurance Co.,*
  8 F.3d 953 (3d Cir. 1993) ................................................................................ 20

*Hi Tech Transportation, LLC v. New Jersey,*
  382 F.3d 295 (3d Cir. 2004) .............................................................................. 8

*Klay v. PacifiCare Health Systems,*
 389 F.3d 1191 (11th Cir. 2004)............................................................ 10


*Lac D'Amiante du Quebec, LTEE v. American Home Assurance Co.,*
 864 F.2d 1033 (3d Cir. 1998)........................................................ 17, 18

*Landis v. North American Co.,*
 299 U.S. 248 (1936)............................................................................ 24

*Moses H. Cone Memorial Hospital v. Mercury Construction Co.,*
 460 U.S. 1 (1983)................................................................................. 8

*Pueblo International, Inc. v. De Cardona,*
 725 F.2d 823 (1st Cir. 1984)............................................................... 19

*Ryan v. Johnson,*
 115 F.3d 193 (3d Cir. 1997)................................................................ 17

*Smith v. Berg,*
 247 F.3d 532 (3d Cir. 2001)................................................................ 10

*Spring City Corp. v. American Buildings Co.,*
 193 F.3d 165 (3d Cir. 1999)........................................................... 2, 17

*Trent v. Dial Medical,*
 33 F.3d 217 (3d Cir. 1994)...................................................... 11, 12, 13

*University of Maryland v. Peat Marwick Main & Co.,*
 923 F.2d 265 (3d Cir. 1991)........................................................ *passim*

## DOCKETED CASES

*Daniel v. AON Corp.,*
 No. 99 CH 11893 (Cir. Ct. Cook County Ill. Ch. Div. Mar. 9, 2005)........ *passim*

## FEDERAL STATUTES

29 U.S.C. § 185 .................................................................................. 22

## MISCELLANEOUS

Erwin Chemerinsky, <u>Federal Jurisdiction</u> 824 (3d ed. 1999) .................................... 8

Plaintiffs[1] hereby submit this Memorandum of Law in opposition to Aon's Motion to Stay all proceedings. Relying principally on *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), defendant Aon seeks an order staying this litigation, primarily on the grounds that final approval of a proposed class action settlement may dispose of all claims against Aon, and thus, the Court should avoid piecemeal and duplicative litigation. The Court should deny this request because (1) the *Daniel v. AON Corp.*, No. 99 CH 11893 (Cir. Ct. Cook County Ill. Ch. Div. Mar. 9, 2005) ("*Daniel*") settlement (even if approved) will not preclude all claims asserted in this action against Aon, thus demonstrating that the actions are not parallel as required for *Colorado River* abstention, and (2) the fear of piecemeal litigation, the prior filing of the

---

[1] "Plaintiffs" represent the plaintiffs in the following cases: (1) *Waxman v. Marsh & McLennan Companies*, No. 05-1079; (2) *Eagle Creek, Inc. v. ACE INA Holdings*, No. 05-1167; (3) *OptiCare Health Systems, Inc. v. Marsh & McLennan Cos.*, No. 05-1168; (4) *Lewis v. Marsh & McLennan Cos.*, No. 05-1794; (5) *Preuss v. Marsh & McLennan Cos.*, No. 05-1795; (6) *Clear Lam Packaging, Inc. v. Marsh & McLennan Cos.*, No. 05-1797; (7) *Bayou Steel Corp. v. ACE INA Holdings*, No. 05-1800; and (8) *Priority Ultrasound Services, Inc. v. Aon Corp.*, No. 05-1801, and specifically excludes the "New Jersey Plaintiffs" group, who refused to file a joint brief on behalf of all plaintiffs, despite being provided with a draft four days in advance of this filing.

1

State court action and the possibility that some claims will be released are not exceptional circumstances warranting abstention.

First, Aon overstates the effect the proposed settlement will have on this case if it is approved. It is incorrect that all claims against Aon asserted in this case are released upon final approval of the *Daniel* settlement. Plaintiffs and putative class members who did not retain Aon still have viable claims against Aon for its participation in the alleged RICO conspiracy with other defendants. These plaintiffs are not members of the proposed class and the approval of the *Daniel* settlement will not impair their claims. Thus, even if the *Daniel* settlement is approved, Aon will still have to litigate, at a minimum, claims that it participated in a RICO conspiracy. Furthermore, this fact, *inter alia*, demonstrates that the *Opticare* and *Daniel* actions are not parallel for purposes of *Colorado River* abstention.

Second, assuming the actions are parallel, the Third Circuit's application of *Colorado River* strongly counsels against the entry of a stay. As the court noted in *Spring City Corp. v. American Buildings Co.*, 193 F.3d 165, 172 (3d Cir. 1999), it has long been the law in this circuit that though courts should strive to avoid piecemeal litigation, such concern is not sufficient to warrant abstention and that the party seeking a stay must

demonstrate a "strong federal policy" favoring litigation in one forum. "The general rule regarding simultaneous litigation of similar issues in both state and federal courts is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata or collateral estoppel effect on the other action." *Id.* (quoting *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265, 275-76 (3d Cir. 1991)).

Aon's suggestion that Congress intended or desired that the claims asserted in this action be litigated only in a State forum relies on general principles about the proper forum for litigating insurance cases. However, this case is not simply about insurance claims and regulation, but rather challenges alleged misconduct that violates federal law. Furthermore, Aon concedes that if the proposed settlement is approved, it will "promptly file a motion to dismiss based on the preclusive effect of the *Daniel* settlement." (Aon Mem. at 15). Given this concession, the court should follow the general rule and allow both actions to proceed simultaneously.

Finally, Aon's alternative argument that the Court has the inherent power to order a stay does not avoid the "narrow and exceptional circumstances standard" articulated in *Colorado River*. If the Court determines that abstention is inappropriate under *Colorado River*, the Court

has the "virtually unflagging obligation" to exercise the jurisdiction conferred by Congress. It would certainly produce an anomalous outcome if Aon obtains a stay of this litigation, notwithstanding its inability to satisfy the requirements of *Colorado River*. Moreover, even under the "inherent power" theory, a stay is only justified if exceptional circumstances are present.

### Summary of Relevant Factual Background

On March 4, 2005, Aon entered into a settlement agreement with the Attorney Generals of New York, Connecticut and Illinois (hereinafter the "Attorney General Agreement).[2] The agreement requires Aon to create a fund of $190 million dollars for the benefit of all Aon clients who purchased insurance during the period January 1, 2001 through December 31, 2004. The Attorney General Agreement outlines a procedure that the covered class members must follow in order to receive a monetary benefit.

Aon also settled the *Daniel* litigation at the same time it reached an agreement with the Attorney Generals.[3] The *Daniel* settlement covers Aon

---

[2] The settlement agreement also includes insurance regulators for the State of New York and Illinois.

[3] According to the Illinois Court's preliminary order approving class settlement, a Settlement Fairness Hearing is set to take place October 11, 2005.

4

clients who purchased insurance during the period January 1, 1994 through December 31, 2004.    Though the persons covered under the Attorney General Agreement are included in the *Daniel* class definition, the *Daniel* class is divided into two groups for the purposes of monetary relief.    The first group consists of the persons covered under the Attorney General Agreement and the monetary relief is exactly the same relief made available under that agreement.

The second group consists of Aon clients who purchased insurance between January 1, 1994 and December 31, 2000.    The *Daniel* settlement provides that these class members will each receive a pro rata share of any funds unclaimed by the first group (*i.e.* class members who purchased insurance between January 1, 2001 and December 31, 2004).    Aon also agreed to deposit an additional $38 million into the *Daniel* Fund, but $5 million of the $38 million is earmarked for administrative costs with any remainder reverting to Aon.    Additionally, all attorney fees and costs will be paid exclusively from the *Daniel* fund.    Thus, it is likely that the *Daniel* fund participants will not receive any portion of the $38 million and that this sum will be used to cover administrative expenses, attorney fees and costs.

The order preliminarily approving settlement in *Daniel* certifies the following amended class definition:

> All U.S. Policyholder Clients who directly or indirectly
> employed the services of a direct or indirect subsidiary of Aon
> to place, renew, consult on or service insurance or other similar
> risk solutions products between January 1, 1994 and December
> 31, 2004, wherein Aon received or was eligible to receive
> Contingent Commissions, including consideration in the form
> of a bonus, commission or profit sharing (other than fixed
> consideration based solely upon the actual amount charged by
> the insurer for the insurance and earned upon the
> commencement of the insurance.

The settlement agreement further defines the term "U.S. Policyholder Clients" to mean "U.S. domiciled policyholder clients and policyholder clients who retained Aon's U.S. Offices to place, renew, consult on or service insurance or other similar risk solutions products." (*Daniel v. Aon*, Class Action Settlement Agreement, ¶ 18, p. 6). The class definition is clearly limited to policyholders who retained Aon for the specific purposes enumerated.

If the *Daniel* settlement receives final approval, then the following claims are released against the following entities:

> Defendants, including their subsidiaries, affiliates, associates,
> general or limited partners or partnerships, predecessors,
> successors, and/or assigns, including, without limitation, any of
> their respective present or former officers, directors, trustees,
> employees, agents, attorneys, representatives, shareholders,
> affiliates, associates, general or limited partners or partnerships,
> heirs, executors, administrators, predecessors, successors,
> assigns or insurers and anyone acting on their behalf,
> individually and collectively, from liability for any and all
> claims, demands, debts, rights, causes of action or liabilities
> whatsoever, including known and unknown claims, now

6

existing or hereafter arising, in law, equity or otherwise . . . . (*Daniel v. Aon*, Class Action Settlement Agreement, ¶ 59 p. 21).

By its very terms, the proposed release only covers Aon, affiliated entities and Aon's insurers. The release does not insulate Aon's alleged unaffiliated co-conspirators from liability for participating in the alleged RICO conspiracy. Nor are insurance companies that allegedly paid Aon unlawful compensation for the placement of business (including engaging in bid rigging) released from liability.

## **ARGUMENT**

Aon argues that the Court should stay all proceedings against it because the pending class settlement in *Daniel* will dispose of all claims asserted by the plaintiffs against Aon. Specifically, Aon contends that *Colorado River*'s principle of "wise judicial administration" dictates the entry of a stay because such action (1) avoids piecemeal litigation, (2) significant progress occurred in *Daniel* before this suit was filed and (3) the Illinois Court will protect the interests of the parties in this case.

Contrary to Aon's assertion, the Third Circuit's interpretation and application of *Colorado River* counsels against the entry of a stay. Third Circuit law takes at face value the admonition that a stay pursuant to *Colorado River* "represents an extraordinary and narrow exception to the

'virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.'" *Colorado River*, 424 U.S. at 817.[4] In *University of Maryland*, 923 F.2d at 276, the Third Circuit made the following observations about the Supreme Court's decisions on the issue of abstention:

> [I]n *Moses H. Cone*, the Court made it clear that Colorado River abstention applies only in clear and exceptional cases, **"with the balance heavily weighted in favor of the exercise of jurisdiction."** 460 U.S. at 16. (emphasis added).

Accordingly, abstention is justified only in clear and exceptional cases where the circumstances overcome the heavily weighted preference for a district court exercising its jurisdiction. *See Hi Tech Trans. LLC v. New Jersey,* 382 F.3d 295, 303 (3d Cir. 2004) (internal citations omitted).[5]

---

[4] In *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*, 460 U.S. 1 (1983), the Supreme Court emphasized again that abstention to avoid duplicative litigation is permissible only in exceptional circumstances. *See* Erwin Chemerinsky, Federal Jurisdiction 824 (3d ed. 1999).

[5] The narrow scope of *Colorado River* abstention stems in large part from the fact that such abstention is not based on constitutional or comity concerns, but rather on prudential considerations relating to the exercise of concurrent jurisdiction. *See Colorado River* 424 U.S. at 817 (observing that "[a]lthough this case [i.e. *Colorado River*] falls within none of the abstention categories, there are principles unrelated to considerations of proper constitutional adjudication and regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions, either by federal courts or by state and federal courts. These principles rest on considerations of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.") (internal citations omitted) (brackets added).

**A.**   **Aon's motion for a stay should be denied because there are claims asserted against Aon that are not affected by the proposed *Daniel* settlement.**

Aon argues that the Court should stay this proceeding because final approval of the *Daniel* settlement will dispose of all claims against Aon. This statement misconstrues the scope of the RICO conspiracy claims asserted against Aon. The *Daniel* settlement does not impair the RICO conspiracy claims that non-Aon clients (*i.e.* persons outside the *Daniel* class definition) assert against Aon for its alleged participation in a RICO conspiracy.

As noted above, the *Daniel* class definition only covers U.S. Policyholder Clients of Aon. The settlement defines the term "U.S. Policyholder Clients" to mean "U.S. domiciled policyholder clients and policyholder clients who retained Aon's U.S. Offices to place, renew, consult on or service insurance or other similar risk solutions products." Thus, plaintiffs and class members who did not retain Aon for any of the enumerated services are clearly free to pursue any and all claims against Aon.

The complaints in this action allege, among other things, that Aon participated in a RICO conspiracy with other broker and insurance company defendants. It is well settled that a participant in a RICO conspiracy is liable

9

to all persons injured by the conspiracy whether or not the participant directly dealt with a particular injured plaintiff and regardless of whether the alleged conspirator actually violated a substantive RICO provision. *See Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) (noting that under RICO, a defendant who opts into or participates in a conspiracy is liable for the acts of his co-conspirators which violate RICO's substantive provisions, even if the defendant did not personally agree to do, or to conspire with respect to, any particular element). Thus, if the plaintiffs who did not retain Aon establish that Aon participated in a RICO conspiracy, Aon would be liable for any injury arising from the conduct of co-conspirators.

In *Klay v. PacifiCare Health Systems,* 389 F.3d 1191 (11th Cir. 2004), the Eleventh Circuit affirmed the district court's conclusion that plaintiffs did not have to contractually arbitrate claims asserted against all RICO co-conspirators even though the plaintiffs had signed arbitration agreements with one of the conspirators. Relying on contract interpretation principles and the body of law interpreting agreements to arbitrate, the district court found and the Appellate Court affirmed that the non-signatory co-conspirators could not compel arbitration of the RICO claims because they had not entered into an agreement to arbitrate with the plaintiffs. 389 F.3d at 1201-02. Likewise, in the case at bar, the *Daniel* settlement agreement

10

cannot apply to non-Aon clients because they are not parties to the agreement. Thus, their RICO conspiracy claims against Aon are not impaired by the *Daniel* settlement, and as a result there is no justification for staying discovery as to these individuals.

**B.**  **Under prevailing Third Circuit law, the *Daniel* case is not a "parallel" proceeding to this case and thus abstention under *Colorado River* is inappropriate.**

Pointing to some of the obvious similarities between the *Daniel* case and this case, Aon argues that the threshold issue of "parallel proceedings" is easily satisfied. As an initial matter, Aon implicitly concedes that without a finding of parallel proceedings, a stay under *Colorado River* is unwarranted. Regardless of whether there are factors favoring abstention, the Court must first find that the *Daniel* case is a parallel proceeding.

The Third Circuit has repeatedly noted that cases that are not truly duplicative do not invite *Colorado River* deference. *See University of Maryland*, 923 F.2d at 276; *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37, 40-41 (3d Cir.1980). Cases are parallel if they involve the same parties and "substantially identical" claims, raising "nearly identical allegations and issues." *Trent v. Dial Med.*, 33 F.3d 217, 224 (3d Cir. 1994). In *Trent*, the Third Circuit discussed the contours of the Third Circuit's "parallel proceeding" requirement:

When a federal court case involves claims that are distinct from those at issue in a state court case, the cases are not parallel and do not justify Colorado River abstention. In *University of Maryland*, for example, we reversed a district court's dismissal of a class action fraud case filed by policyholders of an insolvent insurance company against the insurance company's independent auditor. The district court decided to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (see note 5, supra), in favor of a state court case against the same auditor brought by the Pennsylvania insurance commissioner on behalf of the insurance company and its policyholders. Although the district court had based its decision upon *Burford*, we reviewed its decision under both *Burford* and *Colorado River*. We reversed the district court because the parties and claims in each of the two cases differed. The insolvent insurance company was a party to the state court suit but not to the one brought in federal court. The classes of policyholders involved in each case differed. And the insurance commissioner's lawsuit alleged fewer legal bases for relief than did the federal court suit. *University of Maryland*, 923 F.2d at 268-69. Therefore, the policyholders' claims in the federal court case were "distinct" from those asserted in the commissioner's case; because of this "lack of identity of all issues," and because there was "no theoretical obstacle to both actions proceeding independently," we ruled that abstention under *Colorado River* would be improper. *Id.* at 224.

Contrary to Aon's contention, simply establishing "substantial similarity" between parties and claims does not satisfy the Third Circuit's parallel proceeding requirement under *Trent* and *University of Maryland*. The Third Circuit obviously requires a greater degree of identity between the proceedings than the phrase "substantial similarity" would suggest. Under the Third Circuit's test, the *Daniel* case is not a "parallel proceeding" because (1) the legal issues are different, and (2) the parties are different.

## 1.    **Different Legal Issues**

The *Daniel* third amended complaint does not allege that Aon participated in a RICO conspiracy or that it engaged in conduct prohibited by federal antitrust statutes.  The complaints in the case at bar allege the existence of a RICO conspiracy and violations of the Sherman Act.  The remedies available under these statutes are different than the remedies available under the Illinois common law and statutory claims asserted in *Daniel*.  Because of these differences, the cases are not parallel under Third Circuit law.  This conclusion is consistent with the Third Circuit's holding in *Complaint of Bankers Trust Co.*, 636 F.2d at 40-41.

In *Complaint of Bankers Trust Co.*, the Panel found that there was no substantial identity between two federal actions because neither the parties to nor the relief requested in the two cases at issue were identical, and because the two cases employed substantially different "approaches" and might "achieve potentially different results."  *Id.* at 41; *Trent*, 33 F.3d at 223 (discussing and applying the holding of *Complaint for Bankers Trust* to a *Colorado River* abstention issue).  Clearly, the approach of the *Daniel* case differs substantially from the approach of the case at bar.  Additionally, as noted above, the case at bar might achieve potentially different results by way of remedy.

## 2.    **Different Parties**

In addition to different legal issues, Aon cannot seriously dispute that the parties to this litigation are substantially different from the parties to the *Daniel* case. Though there is some overlap, the differences clearly outnumber the similarities. The complaints at bar name several defendants that are not named in *Daniel*. Likewise, the cases at bar have different sets of plaintiffs. Moreover, the class definition in the cases at bar encompass a substantially larger class than the class definition in *Daniel*. These differences are significant because the complaints in this litigation allege a RICO conspiracy. As an alleged participant in the RICO conspiracy, Aon could be liable to non-clients for the conduct of the co-defendants in this action.

This brings us to one last and important point concerning the issue of parallel proceedings. Aon argues that the primary inquiry is whether there is a substantial likelihood that the non-federal litigation will dispose of all claims presented in the federal case. Even assuming that this is a primary inquiry under Third Circuit law, it is clear that the *Daniel* settlement will not dispose of all claims against Aon. Thus, there is no conservation of judicial resources resulting from the requested stay.

Because the *Daniel* case and this case are not parallel under Third Circuit law, the Court should deny the motion to stay.

**C.** **Even if Aon can establish that the actions are parallel, abstention under *Colorado River* is inappropriate because Aon has failed to show that the relevant factors outweigh the heavily weighted preference favoring the district court's retention of the case on a normal track.**

Aon contends (wrongly in our opinion) that this is the "paradigmatic case for which *Colorado River* abstention is intended." Aon notes that the Supreme Court identified the following factors as relevant to the question of *Colorado River* abstention: (1) avoidance of piecemeal litigation; (2) the order in which jurisdiction was obtained; (3) the inconvenience of the federal forum; (4) whether federal law is implicated; (5) whether the state court proceedings are adequate to protect the parties' rights; and (6) jurisdiction over the property. However, according to Aon, only three factors clearly favor abstention: namely, avoidance of piecemeal litigation, the progress in the *Daniel* case and the ability of the Illinois Court to protect the interests of the parties in this action.

**1.   Aon's submission fails to meet the Third Circuit's interpretation of the "avoidance of piecemeal litigation" factor because there is no showing that Congress specifically intended to have the claims in this case resolved in one forum.**

The first factor Aon discusses is the avoidance of piecemeal litigation. Relying principally on *Gabelli v. Sikes*, No. 90 Civ. 4904, 1990 U.S. Dist. LEXIS 17015 (S.D.N.Y. Dec. 14, 1990) Aon argues that in the class action settlement context, a district court should abstain until the state court has ruled on whether the settlement is approved, in order to avoid a "visible threat to efficient adjudication." The *Gabelli* court noted that a stay was proper because of the imminent possibility that the State court will dispose of the exclusive federal issue by approving the settlement and its attendant releases. Aon argues that because this case is similar to the situation in *Gabelli*, the Court should also abstain until after the Illinois Court has conducted a fairness hearing and ruled on the proposed settlement.

The obvious problem with this argument is that approval of the *Daniel* settlement and its attendant releases will not result in Aon's dismissal from this case. Plaintiffs who were not Aon clients still have a RICO conspiracy claim against Aon. Nor will the settlement resolve the need to obtain discovery from Aon even if Aon is ultimately dismissed and other defendants remain in the case because even class members covered under

the *Daniel* settlement will be entitled to pursue claims against other defendants in this action.   Since Aon possesses information on their accounts, the plaintiffs will likely seek third-party discovery from Aon.

Leaving these arguments aside, Aon recognizes that in the Third Circuit it is insufficient to simply claim duplication of resources.  The party seeking a stay must show that there is a strong Congressional policy against piecemeal litigation of the claims asserted in the complaint. *Spring City Corp.*, 193 F.3d at 171-172.  The strong policy must be litigation specific. Moreover, the presence of federal claims militates against abstention. *Ryan v. Johnson,* 115 F.3d 193, 199 (3d Cir. 1997)

Aon argues that the McCarran-Ferguson Act evinces Congress's strong policy of allowing States to regulate insurance activities.  Citing two Third Circuit cases, Aon contends that there is a strong Congressional policy favoring litigation of insurance matters in state court.  The cases cited by Aon, however, are distinguishable.

In *Lac D'Amiante du Quebec, LTEE v. American Home Assurance Co.*, 864 F.2d 1033, 1045 (3d Cir. 1998), the Court affirmed a holding of *Burford v. Sun Oil Co.,* 319 U.S. (1943) abstention on the grounds that the State had a regulatory system to deal with the liquidation of an insurance company.   The issue was whether the federal court (which obtained

jurisdiction on diversity grounds) should allow the State of New York to handle the liquidation. The Panel noted that New York had a comprehensive scheme governing liquidation of insurance companies and the New York courts worked well with the Insurance department in handling liquidations. It also noted that the indemnity action involved the highly controversial and unsettled question of whether asbestos exposure, manifestation, or some accommodation thereof triggered insurance coverage. The Panel ultimately concluded that the federal court system should allow this process to work without interference.

The facts in this action are quite different. First, there is no claim that *Burford* abstention is appropriate. The concern of interference with a comprehensive regulatory scheme is not present on these facts. Rather, an examination of the *Daniel* complaint shows that the Illinois court is presiding over common law claims and statutory claims involving deceptive trade practices and fraud. Indeed, there are apparently only two class claims in the complaint, and both deal with breach of common law fiduciary duty. Aon does not point to strong federal policy favoring State courts as the preferred forum for adjudicating a **nationwide** class action involving common law claims for breach of fiduciary duty.

Second, *Lac D'Amiante* was a diversity action that sought exclusively equitable relief (*i.e.* indemnity). The plaintiff did not assert federal law claims. In the case at bar, the plaintiffs assert federal statutory causes of action. Indeed, with respect to the federal antitrust claims, the Illinois court lacks subject matter jurisdiction. In other words, the federal antitrust claims are within the exclusive jurisdiction of federal courts. *See General Inv. Co. v. Lake Shore & M.S. Ry. Co.*, 260 U.S. 261, 287 (1922); *Feldman v. Gardner*, 661 F.2d 1295, 1303 (D.C. Cir. 1981), *vacated on other grounds*, 460 U.S. 462 (1983); *Pueblo Intl' Inc. v. De Cardona*, 725 F.2d 823, 827 (1st Cir. 1984).

In *Chiropractic America v. Lavecchia*, 180 F.3d 99 (3d Cir. 1999), the Panel affirmed the district court's abstention on the grounds that there was very little federal interest in regulating automobile insurance. In *Lavecchia*, the plaintiffs were challenging as unconstitutional regulations adopted by New Jersey's Insurance Commission that dealt with post-accident medical care. The New Jersey Legislature had adopted several amendments to its comprehensive no-fault insurance statutory scheme and the challenged regulations were promulgated pursuant to the amendments. Shortly after filing the federal action, the plaintiffs sought review of the insurance regulations in New Jersey Superior Court. The Panel in *Lavecchia* found

that abstention was appropriate in order to avoid interfering with New Jersey's complex regulatory solution to the state's no-fault insurance problem.

Again, unlike the cases at bar, there is no claim that *Burford* abstention is appropriate. The fact that the Panel in *Lavecchia* found that New Jersey state courts are better suited to handle challenges to regulations dealing with certain aspects of New Jersey's no-fault auto insurance regulatory scheme does not support the blanket proposition that Congress adopted a strong policy favoring State courts as the appropriate forum for handling the claims asserted in this action.

Contrary to Aon's suggestion, the *Daniel* case is more like the situation in *Grode v. Mutual Fire, Marine & Inland Insurance Co.*, 8 F.3d 953 (3d Cir. 1993). In *Grode*, the Panel found that abstention was inappropriate because there was no strong federal policy favoring litigation of claims involving insurance contracts in a State forum. This was particularly true when the case raised federal issues.

### 2. Though the *Daniel* case has been pending since 1999, it is unclear whether the referenced discovery and briefing are of any significance to this action. In any event this factor has little weight given that the *Daniel* settlement will not dispose of all claims.

Without providing specifics, Aon argues significant progress occurred in the *Daniel* matter before this case was filed in that Aon produced over five hundred thousand pages of documents, the parties briefed dozens of substantive and procedural issues and a nationwide class was certified.[6] Citing *Eastern Associated Coal Corp. v. Skaggs*, 272 F. Supp. 2d 595, 602 (S.D. W. Va. 2003), Aon argues that as a matter of comity, federal courts should abstain when a state has invested its time and resources into the proceedings.

The facts in *Eastern Associated Coal* are distinguishable from the cases at bar. In *Eastern Associated Coal*, the employer filed a complaint in federal court seeking to compel arbitration of the plaintiff's work

---

[6] It is difficult to gauge whether progress in *Daniel* case was due to efforts of Mr. Daniel's counsel or whether it was driven by the State Attorney Generals. Aon admits that the *Daniel* matter was pending long before any attorneys general were even investigating the contingent commissions. However, it appears that the case started to progress relatively recently because the attorneys general became actively interested in the practices challenged in this case. If this is true, the significant progress cited was not a function of the long pendency of the *Daniel* matter but more a result of investigations that occurred contemporaneously with the filing of this suit.

compensation retaliation claim and his claim that the employer's rehabilitation program violated the State's workers compensation statute as well as the State's disability discrimination statute. After approximately three years of litigating the case in State court (including an appeal to the West Virginia Court of Appeals), the employer filed a federal action seeking to compel arbitration pursuant to an agreement governed under Section 301 of the Labor Management Relations Act (29 U.S.C. § 185). The district court granted a motion to dismiss on abstention grounds. However, a key to the district court's decision is that the employer waited several years before seeking to compel arbitration. The district court found that "exceptional circumstances" warranted abstention and emphasized that Eastern had presented no justification for its long delay in seeking federal-court intervention in the case, and that the court could think of none. *Id.* at 599. The district court was unwilling to order arbitration (and thereby divest the State courts of jurisdiction) given that Eastern was responsible for the effort expended by the State.

Even though *Eastern Coal* is distinguishable because the plaintiffs in this case did not cause a delay, the holding in *Eastern Coal* is at odds with Third Circuit law. Essentially, the district court in *Eastern Coal* states that potential duplication of the State court's efforts (albeit considerable) is

sufficient to warrant a finding of exceptional circumstances. The district court also appeals to the notion of comity as a basis for its decision to abstain. As detailed above, the fear of duplicating the State court's efforts is not sufficient under Third Circuit law to justify abstention. With respect to the issue of comity, even though exercising federal jurisdiction after the State had exerted considerable effort may appear to discount the State's efforts, such concerns are not appropriate when considering a *Colorado River* based request for abstention. The doctrine of abstention articulated in *Colorado River* is not a comity based doctrine and it solely focuses on the use of judicial resources. This explains why *Colorado River* abstention is significantly more narrow than other abstention doctrines.

Because there is no conservation of judicial resources even if the Illinois Court approves the *Daniel* settlement, the Court should not abstain on the basis that more progress has occurred in *Daniel*. As noted above, plaintiffs in this action will still have a viable claim against Aon regardless of the outcome in *Daniel*.

3.   **Aon's statement that the Illinois Court will protect the Interest of the Parties in this Case misconstrues the relevance of this factor because the issue is not only whether the Illinois Court will act impartially and give affected class members a hearing but whether the Illinois Court has the power to act and to grant the remedy sought by the plaintiffs in this case.**

Aon claims that the Illinois Court will continue to protect the interest of the class and that this factor favors abstention.  However, given that the Illinois Court does not have the power to adjudicate the federal anti-trust claims and likely has limited exposure to federal RICO claims, it is uncertain whether the Illinois Court can protect plaintiffs' federal law interests.

D.   **Aon's appeal to this Court's inherent discretionary power should be rejected because it is an effort to circumvent the limitations imposed by *Colorado River*. Indeed, courts have applied the same exceptional circumstances to request for stays based on the Court's inherent power to manage its docket.**

As a last ditch effort to secure a stay, Aon argues in the alternative that the Court could order a stay under its inherent power to manage its docket.  However, this request for a stay is subject to the same "exceptional circumstances" test articulated in *Colorado River*.  The reliance on inherent power undercuts the numerous Supreme Court decisions disapproving the entry of a stay in the absence of compelling reasons.  For example in *Landis v. North American Co.*, 299 U.S. 248, 255 (1936) Justice Cardozo wrote:

> [T]he suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstance will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will settle the rights of both. *See also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985).

Recognizing that a discretionary stay does not draw its source from a statutory grant of authority, the Fifth Circuit set the following guidelines for a discretionary stay:

> Generally, the moving party bears a heavy burden to show why a stay should be granted absent statutory authorization, and a court should tailor its stay so as not to prejudice other litigants unduly. Where a discretionary stay is proposed, something close to genuine necessity should be the mother of its invocation.

*Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co.,* 761 F.2d 198, 204 n.6 (5th Cir. 1985) (Arbitration Act does not authorize a **stay** unless the case presents issues referable to arbitration under an agreement between the parties).

Outside the context of arbitration, the Third Circuit apparently applies an exceptional circumstances test. As the Panel noted in *Trent*, the Third Circuit in *Complaint of Bankers Trust* reversed a stay granted under the inherent power theory because the actions did not involve identical parties and claims. Indeed, most cases dealing with the "inherent power" theory

have arisen in the context of a parallel arbitration proceeding between the parties.

Because this action does not involve a parallel arbitration proceeding between the parties, the Court should apply the narrow test articulated in *Colorado River*.   As argued above, Aon cannot sufficiently satisfy the requirements of *Colorado River* and overcome the heavily weighted preference for allowing this case to more forward.

## CONCLUSION

For the above stated reasons, the plaintiffs respectfully request that the

Court deny Aon's motion to stay all proceedings.

DATED:  April 25, 2005                    Respectfully submitted,

                                          **MILBERG WEISS BERSHAD
                                          & SCHULMAN LLP**


                                          */s/ Edith M. Kallas*
                                          Edith M. Kallas
                                          Joseph P. Guglielmo
                                          J. Douglas Richards
                                          Michael M. Buchman
                                          Elizabeth Rosenberg
                                          Lili R. Sabo
                                          One Pennsylvania Plaza
                                          New York, NY  10119
                                          Telephone:  212-594-5300
                                          Facsimile:  212-868-1229

                                          *Plaintiffs' Preliminary Liaison Counsel and
                                          Counsel for Opticare Health Systems, Inc. and
                                          Maryann Waxman*

                                          **ALEXANDER, HAWES & AUDET, LLP**
                                          William M. Audet
                                          300 Montgomery St., Ste. 400
                                          San Francisco, CA 94104
                                          Telephone:  415-982-1776

                                          *Attorneys for Plaintiff Priority Ultrasound
                                          Services*

                                          **BONNETT, FAIRBOURN, FRIEDMAN
                                          & BALINT, P.C.**
                                          Andrew S. Friedman
                                          Elaine A. Ryan
                                          Patricia N. Hurd
                                          2901 N. Central Avenue
                                          Suite 1000
                                          Phoenix, AZ  85012
                                          Telephone:  602-274-1100
                                          Facsimile:  602-274-1199

                                          *Attorneys for Plaintiff Maryann Waxman*

27

**CHAVEZ LAW FIRM, P.C.**
Kathleen C. Chavez
P.O. Box 772
Geneva, IL 60134
Telephone: 630-232-4480
Facsimile: 630-232-8265

*Attorneys for Plaintiff Clear Lam Packaging, Inc.*

**COHN LIFLAND PEARLMAN HERRMANN & KNOPF LLP**
Peter S. Pearlman
Park 80 Plaza West-One
Saddle Brook, NJ 07663
Telephone: 201-845-9600
Facsimile: 201-845-9423

*Attorneys for Plaintiff Maryann Waxman*

**DRUBNER HARTLEY & O'CONNOR**
James E. Hartley, Jr.
Gary O'Connor
500 Chase Parkway, 4th Floor
Waterbury, CT 06708
Telephone: 203-753-9291
Facsimile: 203-753-6373

*Attorneys for Plaintiffs Opticare Health Systems, Inc. and Maryann Waxman*

**LARRY D. DRURY, LTD.**
Larry D. Drury
Two North LaSalle Street
Suite 700
Chicago, IL 60602
Telephone: 312-346-7950

*Attorneys for Plaintiffs Sheldon and Estelle Langendorf*

**FINE KAPLAN & BLACK**
Roberta D. Liebenberg
1845 Walnut Street
Philadelphia, PA 19103
Telephone: 215-567-6566
Facsimile: 215-568-5872

*Attorneys for Plaintiffs Eagle Creek, Inc. and Bayou Steel Corporation*

28

**FOOTE, MEYERS, MIELKE, FLOWERS**
 **& SOLANO**
Robert M. Foote
416 South Second Street
Geneva, IL  60134
Telephone:  630-232-6333

*Attorneys for Plaintiff Clear Lam Packaging, Inc.*


**GRAY, WEISS AND WHITE**
Mark K. Gray
1200 PNC Plaza
Louisville, KY  40202
Telephone:  502-585-2060

*Attorneys for Plaintiff Clear Lam Packaging, Inc.*

**LERACH COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
John J. Stoia, Jr.
Theodore J. Pintar
Bonny E. Sweeney
Timothy G. Blood
James D. McNamara
Mary Lynne Calkins
Rachel L. Jensen
Amelia F. Burroughs
401 B Street, Suite 1600
San Diego, California  92101
Telephone:  619-231-1058
Facsimile:  619-231-7423

**LERACH COUGHLIN STOIA GELLER**
**RUDMAN & ROBBINS LLP**
Samuel H. Rudman
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:  631-367-7100
Facsimile:  631-367-1173

*Attorneys for Plaintiffs Opticare Health Systems, Inc. and Maryann Waxman*

29

**LEVIN, FISHBEIN, SEDRAN & BERMAN**
Howard J. Sedran
Suite 500
510 Walnut Street
Philadelphia, PA  19106
Telephone:  215-592-1500
Facsimile:  215-592-4663

*Attorneys for Plaintiffs Eagle Creek, Inc.*
*and Bayou Steel Corporation*

**JEFFREY LOWE, P.C.**
Jeff Lowe
8235 Forsyth Blvd., Ste. 1100
St. Louis, MO 63105
Telephone: 314-721-3668

*Attorneys for Plaintiff Priority Ultrasound*
*Services*

**MAGER WHITE & GOLDSTEIN, LLP**
Jayne Arnold Goldstein
2825 University Drive, Suite 350
Coral Springs, FL  33065
Telephone:  954-341-0844
Facsimile:  954-341-0855

*Attorneys for Plaintiff Stephen Lewis and*
*Diane Preuss*

**SPARKMAN-ZUMMACH, P.C.**
Martin W. Zummach
P.O. Box 266
Southaven, MS 38671
Telephone:  662-349-6900
Facsimile:  662-349-6800

*Attorneys for Plaintiff Priority Ultrasound*
*Services*

**WHATLEY DRAKE, LLC**
Joe R. Whatley, Jr.
Charlene Ford
Richard Frankowski
2323 Second Avenue North
Birmingham, AL  35203
Telephone:  205-328-9576
Facsimile:  205-328-9669

*Attorneys for Plaintiffs Opticare Health*
*Systems, Inc. and Maryann Waxman*

30

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
Mary Jane Edelstein Fait
Adam J. Levitt
656 West Randolph Street
Suite 500 West
Chicago, IL 60661
Telephone: 312-466-9200
Facsimile: 312-466-9292

**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLC**
Fred Taylor Isquith
270 Madison Avenue, 10th Floor
New York, NY 10016
Telephone: 212-545-4600
Facsimile: 212-545-4653

*Attorneys for Plaintiffs Stephen Lewis and*
*Diane Preuss*